# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| ADNEXUS INCORPORATED, | |
| Plaintiff, | Civil Action No. 6:23-cv-00152-JKP |
| v. | **JURY TRIAL DEMANDED** |
| META PLATFORMS, INC. | |
| Defendants. | |

# DEFENDANT META PLATFORMS, INC.'S
# OPPOSED MOTION TO DISMISS
# ADNEXUS INC.'S FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................... 1

II.    STATEMENT OF FACTS .................................................................................... 3

    A.    The Patent-in-Suit ....................................................................................... 3

    B.    Plaintiff's Allegations ................................................................................. 6

III.   LEGAL STANDARD ............................................................................................ 7

IV.   ARGUMENT .......................................................................................................... 8

    A.    The Amended Complaint Fails to State a Claim for Direct Infringement ..................... 8

        1.    Plaintiff does not allege that the determination of whether the identifier is present occurs "in response to" receiving an indication that the advertisement was interacted with, as required by element [1d] ................................................................................................ 9

        2.    Plaintiff does not allege facts to support that the Accused Product generates a user profile if the "identifier" is not present, as required by element [1e] ................................ 10

        3.    Plaintiff does not allege facts to support that a "delivery method preference" is present in the accused user profile if the identifier is present, as required by element [1f] . 12

        4.    Plaintiff does not allege that additional information associated with the advertisement is delivered, or that the delivery is based on delivery method preferences if the identifier is present, as required by element [1h] ................................................................ 14

    B.    The Amended Complaint Fails to State a Claim for Indirect Infringement .................. 16

    C.    The Amended Complaint Should Be Dismissed with Prejudice Because Additional Amendment Would Be Futile ................................................................................ 17

V.    CONCLUSION .................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Texas, LLC v. Blackberry Ltd.*,
    No. 6:13-cv-362, 2014 WL 12551207 (W.D. Tex. Apr. 30, 2014) .................................... 16

*Affinity Labs of Texas, LLC v. Toyota Motor N. Am.*,
    No. 6:13-CV-365, 2014 WL 2892285 (W.D. Tex. May 12, 2014)..................................... 16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................7, 8

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012) .................................................................................... 16

*Bot M8 LLC v. Sony Corp. of Am.*,
    4 F.4th 1342 (Fed. Cir. 2021) ........................................................................................ 8

*Commil USA, LLC v. Cisco Sys.*,
    135 S. Ct. 1920 (2015)................................................................................................. 17

*Deere & Co. v. Bush Hog, LLC*,
    703 F.3d 1349 (Fed. Cir. 2012) .................................................................................... 13

*Ericsson, Inc. v. D-Link Sys., Inc.*,
    773 F.3d 1201 (Fed. Cir. 2014) .........................................................................10, 12, 15

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
    313 F.3d 305 (5th Cir. 2002) ........................................................................................ 17

*Grecia Estate Holdings LLC v. Meta Platforms, Inc.*,
    605 F. Supp. 3d. 905 (W.D. Tex. 2022) .......................................................................... 5

*Iron Oak Techs., LLC v. Acer Am. Corp.*,
    No. 6:17-cv-00143, 2017 WL 9477677 (W.D. Tex. Nov. 28, 2017)................................... 8

*Jose v. Northside Independent School District*,
    No. SA-19-cv-393-JKP, 2021 WL 1111150 (W.D. Tex. Mar. 23, 2021) ........................... 18

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
    572 U.S. 915 (2014)..................................................................................................... 16

*LS Cloud Storage Technologies, LLC v. Amazon.com, Inc.*,
    2023 WL 2290291 (W.D. Tex. Feb. 27, 2023) ................................................................ 8

*Marucci Sports, L.L.C. v. National Collegiate Athletic Ass'n*,
    751 F.3d 368 (5th Cir. 2014) ........................................................................... 18

*Nalco Co. v. Chem-Mod, LLC*,
    883 F.3d 1337 (Fed. Cir. 2018) ...................................................................... 16

*Ormco, Corp. v. Align Tech., Inc.*,
    463 F.3d 1299 (Fed. Cir. 2006) ........................................................... 10, 11, 15

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 1, 7

Defendant Meta Platforms, Inc. ("Meta") respectfully moves to dismiss Plaintiff Adnexus Inc.'s ("Plaintiff") Amended Complaint (Dkt. 16) for failing to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

## I.    INTRODUCTION

Plaintiff did not, and cannot, plausibly allege direct or indirect infringement of U.S. Patent No. 8,719,101 (the "'101 Patent"), a patent purportedly directed to a method for interactive online advertising. According to the claims of the '101 Patent, a user is presented with an advertisement. Once the user interacts with the advertisement, the claimed method determines whether an identifier is present on the computing device. If an identifier ***is not*** present, the method will perform a series of steps, including "generating a user profile." If an identifier ***is*** present, the method performs an ***alternative series*** of steps, which include retrieving a user profile including delivery method preferences. The Amended Complaint fails to plausibly allege that the sole Accused Product, Meta Lead Ads, meets these key claim requirements—many of which were relied on to distinguish the invention over prior art during prosecution of the '101 Patent. As such, the Amended Complaint must be dismissed.

***First***, the claims require determination of whether an "identifier" is present on the computing device "in response to receiving the indication" that a user has interacted with an advertisement. (*See* '101 Patent, claim [1d].) This step is imperative because it forms the basis for the claimed alternative steps—i.e., it is used to determine whether to generate a user profile or retrieve an existing user profile. Yet the Amended Complaint fails to plausibly allege that the Accused Product performs this threshold step. Plaintiff merely alleges that Meta "can" check for cookies that "can" identify the user, but makes no factual allegation that this alleged determination is actually performed, or that it occurs "***in response to***" an indication of the user interacting with

an advertisement (as opposed to **before**, when the user first logs into their account or first accesses a webpage).

**Second**, even assuming the threshold determination is performed, which it is not, Plaintiff fails to plausibly allege that the Accused Product performs key limitations of the resulting steps. According to the patent, if it is determined that an identifier **is not** present, the claimed method requires performing a series of steps, including, *inter alia*, "**generating** a user profile." (*Id.*[1]) Plaintiff fails to allege facts to support an allegation that the Accused Product **generates a user profile** after determining that an identifier is **not** present. Plaintiff's only allegations for this element show that a user profile already exists on the user's device (i.e., an identifier **is** present) and suggests that modifying that profile is possible—neither of these allegations support a conclusion that a user profile is "generated" when an identifier is not present.

**Third**, the Amended Complaint's allegations with respect to the second alternative, i.e., when the identifier **is** present, fare no better. When an identifier **is** present, the claim requires performing a series of steps that include, *inter alia*, retrieving a user profile that includes delivery method preferences, "retrieving additional information associated with the advertisement based on at least a portion of the user profile associated with the recipient," and "delivering the additional information to the recipient based on the delivery method preferences." (*Id.*) Yet, the Amended Complaint fails to allege facts to support an allegation that the Accused Product meets any of these limitations.

Each of these deficiencies are fundamental and form an independent basis to dismiss the Amended Complaint. Plaintiff has been unable to cure these defects despite being provided with

---

[1] All emphasis in this motion is added unless otherwise indicated.

notice of each deficiency and being given an opportunity to amend its Complaint.  As such, the Amended Complaint should be dismissed with prejudice.

## II.    STATEMENT OF FACTS

### A.    The Patent-in-Suit

1.      The '101 Patent describes a method for interactive online advertising that involves "an advertisement associated with a first party that contains an interactive element displayed within the advertisement." ('101 Patent, Abstract.)

2.      Specifically, it describes a method where a first party is provided with an advertisement.  After the recipient interacts with the advertisement, a determination is made as to "whether or not the recipient can be recognized by a cookie or other identifier placed on the visitor's computing device." (*Id.* at 4:51-56, 6:1-7.)  The result determines which of the following alternate method steps are performed.  (*Id.* at 4:54-56.)  If an "identifier" is ***not*** already stored on the recipient's computer, "an interface option, such as the text field 158, is presented, opened or activated on the banner advertisement 154.  At step 320, using his or her browser client 112, the recipient enters his or her email address into the text field 158." (*Id.* at 5:29-35.)  A confirmation email is then sent to the inputted email address, and "the recipient may enter additional preferences and contact information in the confirmation email" in order to create a user profile.  (*Id.* at 5:32-43.)  A "cookie" or other "identifier" is then stored on the recipient's computer so that she may be recognized in later interactions.  (*Id.* at 4:19-24, 5:16-20.)

3.      Alternatively, if an "identifier" ***is already*** stored on the recipient's computer, then "the banner server 108 loads the recipient preferences from the visitor information database 106," and additional information related to the advertisement is delivered to her according to her pre-stored delivery preferences.  (*Id.* at 4:25-31, 4:57-65, 6:10-12.)  These pre-stored delivery preferences identify the user's preferred ***delivery method***, such as by text message, browser, email,

3

or instant message. (*Id.* at 4:44-48, 4:59-62.)

    4.     These method steps are reflected in Claim 1 of the '101 Patent, which is reproduced

below:[2]

**[1a]** 1. A method of online advertising, comprising:

> **[1b]** providing an advertisement associated with a first party for display in a network communication delivered to a computing device of a recipient during a browsing session, wherein the advertisement contains an interactive element displayed within the advertisement, and wherein the network communication is associated with a second party different than the first party;

> **[1c]** receiving an indication that the recipient activated the interactive element displayed within the advertisement;

> **[1d]** *determining, in response to the receiving the indication, whether an identifier containing unique identifying information about the recipient is present on the computing device*;

> **[1e]** *if the identifier containing unique identifying information about the recipient is not present on the computing device:*

>> *causing a text field to be displayed in at least a portion of the advertisement;*

>> receiving contact information inputted into the text field by the recipient;

>> *generating a user profile associated with the recipient based on the contact information;* and

>> causing an identifier associated with the user profile to be stored on the computing device of the recipient; and

> **[1f]** *if the identifier containing unique identifying information about the recipient is present on the computing device*:

>> *retrieving a user profile associated with the recipient from a visitor information database using at least a portion of the identifier, wherein the user profile comprises at least delivery method preferences and demographic information;*

>> **[1g]** retrieving additional information associated with the advertisement based on at least a portion of the user profile associated with the recipient;

---

[2] Meta includes the same claim element numbering that Plaintiff used in its claim chart for ease of reference only.

> **[1h]** *delivering the additional information to the recipient based on the delivery method preferences, the delivering being performed without interrupting the browsing session of the recipient;* and
>
> **[1i]** recording the activation by the recipient of the interactive element as recipient tracking data in an analytics server, the recipient tracking data being associated with the unique identifying information about the recipient.

(*Id.* at 9:2-47.)

5.     During patent prosecution, the patentee emphasized that determining whether the recipient was recognized (such as by determining whether an "identifier" was stored on the recipient's computer), and **then** performing one of the two alternative series of steps based on the result of that determination, was a key feature of the claimed invention.  (Ex. 3 ('101 File History) at 186.[3])  The patent examiner initially rejected the application, finding that the claimed invention was obvious in view of preexisting methods for online advertising.  In order to overcome the obviousness rejection, the patentee argued that the prior art methods identified by the examiner "fail to disclose 'determining in response to the receiving the indication, whether an identifier containing unique identifying information about the recipient is present on the computing device,' and **subsequently performing alternate method steps based on the determination**, as recited in claim 18."[4]  (Ex. 3 ('101 File History) at 186.)  Based on this argument, the examiner allowed the patent to issue, explaining that "Applicant's remarks/arguments . . . regarding rejections over [the asserted prior art methods] are persuasive and are incorporated by reference herein as the reasons for allowance of claims 18-21."  (*Id.* at 206.)  Therefore, both patentee and the examiner believed

---

[3] Matters of public record, such as a patent's prosecution history, are properly considered at the pleading stage.  *See, e.g.*, *Grecia Estate Holdings LLC v. Meta Platforms, Inc.*, 605 F. Supp. 3d. 905, 914-15 (W.D. Tex. 2022).

[4] Then-pending "claim 18" referred to during prosecution became "claim 1" in the as issued '101 Patent.  (*See* Ex. 3 ('101 File History) at 209.)

that the determination and alternative method steps were key aspects of the patent claims' alleged inventiveness.

### B.  Plaintiff's Allegations

6.      On February 23, 2023, Plaintiff filed a Complaint for infringement of the '101 Patent.  (Dkt. 1.)

7.      The Complaint alleged only direct infringement of the '101 Patent.  (Dkt. 1 ¶¶ 19-22.)  While the Complaint generally alleged infringement of "one or more claims" of the '101 Patent, it only specifically identified claim 1.  (*Id*.)  Likewise, the claim chart accompanying the Complaint only identified claim 1.  (Dkt. 1-3.)  Claim 1 is the only independent claim of the '101 patent.  (*See* '101 Patent, claims 1-4.)

8.      Both the Complaint and attached claim chart only specifically identified Meta Lead Ads as an Accused Instrumentality or Accused Product.  (Dkt. 1 ¶ 15; Dkt. 1-3 at 1.)

9.      On May 12, 2023, in compliance with the Court's October 19, 2022, Standing Order in Civil Cases, Meta sent Plaintiff a letter detailing a number of deficiencies identified in the Complaint and claim chart.  (*See* Cox Decl. ¶ 4; Ex. 1 (Deficiency Letter).)  In summary, Meta explained that the Complaint failed to allege:  (1) what specific structure constitutes the alleged "identifier"; (2) that the alleged determination of whether the identifier is present occurs *after* the advertisement is interacted with (as opposed to before); (3) if the identifier is *not* present, that a text field is displayed; (4) if the identifier is *not* present, generating a user profile; (5) if the identifier *is* present, that the user profile contains delivery method preferences, and (6) if the identifier *is* present, retrieving and delivering additional information based on the delivery method preferences.  (Ex. 1 (Deficiency Letter).)  On May 17, 2023, counsel for both parties met and conferred, and Plaintiff's counsel confirmed they had no questions and required no clarifications about the deficiencies Meta identified in the letter.  (Cox Decl. ¶ 5.)

10.     On May 26, 2023, Plaintiff filed an Amended Complaint and associated claim chart. (Dkt. 16; Dkt. 16-2.)  Plaintiff's amendments were minor and limited to the introductory paragraph to five of the nine claim elements, two new citations, and the removal of two citations.  (*See* Ex. 2 (Claim Chart Redline).)

11.     As in the Complaint, the Amended Complaint alleges direct infringement of the '101 Patent, but also adds new allegations of induced infringement, contributory infringement, and willful infringement.  (Dkt. 16 ¶¶ 16-29.)  As in the Complaint, the Amended Complaint and associated claim chart only specifically allege infringement of claim 1 of the '101 Patent and only specifically identify Meta Lead Ads as the Accused Product.  (*See id.* ¶¶ 15, 17; Dkt. 16-2.)

12.     The Amended Complaint and the amended claim chart do not remedy the deficiencies identified in Meta's Deficiency Letter, including:  (1) that the determination of whether the identifier is present occurs *after* the advertisement is engaged; (2) if the identifier is *not* present, generating a user profile; (3) if the identifier *is* present, that the retrieved user profile contains delivery method preferences, and (4) if the identifier *is* present, retrieving and delivering additional information based on the delivery method preferences.  (*See* Dkt. 16; Dkt. 16-2; Ex. 1 (Deficiency Letter).)

13.     Each of the deficiencies raised in this motion were previously raised in Meta's letter to Plaintiff and during the conference between the parties' counsel.  (Cox Decl. ¶¶ 4-5; Ex. 1 (Deficiency Letter).)

## III.    LEGAL STANDARD

To provide defendants "fair notice" of the asserted cause of action and the grounds upon which it rests, Fed. R. Civ. P. 12(b)(6) requires that a complaint contain sufficient factual matter, if accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To cross

the threshold, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," based on "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Iron Oak Techs., LLC v. Acer Am. Corp.*, No. 6:17-cv-00143, 2017 WL 9477677, at *6 (W.D. Tex. Nov. 28, 2017).

"[A] plaintiff cannot assert a plausible claim for [patent] infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused products has those elements." *Bot M8 LLC v. Sony Corp. of Am.,* 4 F.4th 1342, 1353 (Fed. Cir. 2021). Rather, "a plaintiff must plead facts that plausibly suggest that the accused product meets *each limitation* of the asserted claim or claims" and "[t]here must be some factual allegations that, when taken as true, articulate *why it is plausible* that the accused product infringes the patent claim." *LS Cloud Storage Technologies, LLC v. Amazon.com, Inc.*, 2023 WL 2290291, at *3 (W.D. Tex. Feb. 27, 2023). "The level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Bot M8*, 4 F.4th at 1354.

## IV.   ARGUMENT

### A.   The Amended Complaint Fails to State a Claim for Direct Infringement

The Amended Complaint fails to adequately allege that the Accused Product meets the required limitations of the '101 Patent, including: (1) determining whether the alleged "identifier" is present *"in response to"* receiving an indication that the advertisement was interacted with; (2) if the identifier is *not* present, "generat[ing] a user profile;" (3) if the identifier *is* present, retrieving a user profile that contains "delivery method preferences," and (4) if the identifier *is*

present, retrieving and delivering additional information associated with the advertisement based on the delivery method preferences. Each of these failures individually warrants dismissal of the Amended Complaint.

> **1. Plaintiff does not allege that the determination of whether the identifier is present occurs "in response to" receiving an indication that the advertisement was interacted with, as required by element [1d]**

The Amended Complaint fails to plausibly allege that Meta Lead Ads "***determine[s], in response*** to the receiving the indication, ***whether an identifier*** containing unique identifying information about the recipient ***is present*** on the computing device" and performs one of the two alternative contingent limitations depending on the presence or absence of the identifier. ('101 Patent, claim [1d]; Dkt. 16-2 at 4.)

The amended claim chart points to "user identification information" as the alleged identifier of element [1d]. (Ex. 2 (Claim Chart Redline) ¶ 5; Dkt. 16-2 at 4.) Plaintiff then provides a conclusory statement that "Meta Lead Ads ***can*** check for user identification information" when a target user clicks on an ad, but provides nothing beyond this naked conclusion. (Dkt. 16-2 at 4.)[5] Absent from the pleading are ***any*** factual allegations to support this statement that the determination of whether the claimed identifier is present actually occurs, or that it occurs ***in response to*** receiving the indication that the interactive element of the advertisement was activated. (*See id.*) Even if Plaintiff is correct, and Meta Lead Ads "***can*** check for user identification information," ***nowhere*** does Plaintiff allege that the Accused Product does in fact "check for user identification information" ***in response to*** a user interacting with a Meta Lead Ad (as opposed to

---

[5] This introductory paragraph language was added in response to Meta notifying Plaintiff that the original Complaint and claim chart had not demonstrated that the determination whether the "identifier" is present occurs ***after*** the user is alleged to interact with the advertisement. (*See* Ex. 1 (Deficiency Letter) at 3-4; Ex. 2 (Claim Chart Redline) ¶ 5.)

checking for the presence of a user identifier *before* that interaction—for example, when a user logs into their account or first accesses a webpage, before interacting with the alleged ad). *See, e.g.*, *Ormco, Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006) ("Method claims are only infringed when the claimed process is performed, not by the sale of an apparatus that is *capable* of infringing use."); *see also Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1221 (Fed. Cir. 2014) ("Because the asserted claim is a method claim, however, the accused devices must also actually perform that method."). Thus, Plaintiff failed to adequately plead that the Accused Product performs the required limitation of element [1d].

Dismissal is even more appropriate here given the patentee's reliance on this element as a point of novelty during prosecution. As discussed above, during prosecution, the patentee emphasized that determining whether the recipient was recognized (such as by determining whether an "identifier" was stored on the recipient's computer), and *then* performing one of the two alternative series of steps based on the result of that determination, was a key feature of the claimed invention. (*See supra*, § II.A, ¶ 5.) As this Court observed in *Vervain, LLC v. Micron Tech., Inc.*, "a higher level of detail in pleading infringement may-depending on the complexity of the technology-be demanded for elements clearly 'material' to novelty and non-obviousness." Case No. 6:21-cv-00487-ADA, 2022 WL 23469, *9 (W.D. Tex. 2022); *see id.* at *15 ("demand[ing] a higher level of pleading" when the "limitations lay at the point of novelty".) Plaintiff's bare-boned allegations do not pass muster under any pleading standard and certainly not the higher pleading standard required here.

### 2. Plaintiff does not allege facts to support that the Accused Product generates a user profile if the "identifier" is not present, as required by element [1e]

The Amended Complaint fails to allege that, after determining that the "identifier" *is not*

present, the Accused Product performs each of the following steps: "causing a text field to be displayed in at least a portion of the advertisement; receiving contact information inputted into the text field by the recipient; **generating a user profile** associated with the recipient based on the contact information[.]" ('101 Patent, claim [1e]; Dkt. 16-2 at 4.)[6]  As with element [1d], patentee relied on this series of steps to overcome an obviousness rejection and thus was required to plead this element under a heightened pleading standard.  (*See supra*, §§ II.A, ¶ 5; IV.A.1.)  And, as with element [1d], Plaintiff fails to meet the most basic pleading standard, let alone a heightened standard.

Plaintiff's entire allegation is pure conjecture.  Plaintiff alleges that (1) "Meta Lead Ads **can** display text fields for target customers to enter information"; (2) "Meta Lead Ads **can** prompt the target user to enter missing information that could not be pulled **from their profile** into the empty text fields within the lead ad" and (3) "[t]his information **can** be associated with the user through cookies, acting as user profile information, which can then be stored on the computing device of the recipient."  In other words, an advertiser **could** add display text fields for target customers to enter information.  That "information" **could** include questions to get information that was not available on their profile.  And that information **could** be used as "user profile information."  A series of hypotheticals and possibilities is not sufficient to state a claim.  Notably missing from Plaintiff's entire argument is any fact or allegation that any advertiser or any user **has ever actually performed such a step** and thereby committed an act of infringement.  *See, e.g.*, *Ormco, Corp.*, 463 F.3d at 1311 (holding infringement of a method claim requires actual

---

[6] This same deficiency was present in the original Complaint and discussed at length in Defendant's May 12, 2023, letter and again in the parties' May 17, 2023, meet and confer.  Plaintiff had a fulsome opportunity to ask any questions they had, or seek any clarification needed.  Plaintiff attempted to cure the deficiencies, but Plaintiff's amendments still fail to adequately allege infringement.

performance of the method steps, not just that a product be merely "*capable* of infringing use");
*see also Ericsson, Inc.*, 773 F.3d at 1221 (same).

Furthermore, even if true, this allegation nevertheless fails.  This step of the claim is premised on the requirement that no identifier is present.  (*See* claim [1e] ("if the identifier containing unique identifying information about the recipient *is not present* on the computing device . . . .")  By Plaintiff's own admission, however, the user's profile already exists *before* this step is even alleged to occur.  (Dkt. 16-2 at 4 ("When a user *logs in* to Facebook, user details are stored in a cookie . . .", and "Meta Lead Ads can prompt the target user to enter missing information that could not be pulled *from their profile* . . . .").)  At best, the amended claim chart alleges that an *existing* user profile could be supplemented with additional inputted information. This cannot amount to an allegation that the Accused Product "generat[es] a user profile" or that it does so after determining step that the identifier is *not* present.  (*Id.*)  Given Plaintiff's inability to allege that the Accused Product actually *generates* a user profile after the alleged identifier is determined not to be present, or that any advertiser or user has ever actually performed the steps that Plaintiff merely alleges *could* be performed, the Amended Complaint must be dismissed.

### 3.   Plaintiff does not allege facts to support that a "delivery method preference" is present in the accused user profile if the identifier is present, as required by element [1f]

The Amended Complaint also fails to plausibly allege that when the "identifier" *is* present, Meta Lead Ads "retriev[es] a user profile associated with the recipient from a visitor information database using at least a portion of the identifier, wherein *the user profile comprises at least delivery method preferences* and demographic information."  ('101 Patent, claim [1f]; Dkt. 16-2 at 6-7.)  In the amended claim chart, Plaintiff points to the alleged existence of contact information fields (such as email address and phone number) along with a conclusory—and unsupported— statement that delivery method preferences are also included in the profile.  (*See* Dkt. 16-2 at 6.)

Simply alleging the existence of contact information is insufficient because the '101 Patent makes clear that "contact information" is not the same as the "delivery method preferences" required by element [1f] to exist in the pre-existing user profile. The specification explains that "delivery method preferences" mean a preferred ***method*** by which information is delivered to the recipient, such as by text message, browser, email, or instant message. ('101 Patent, 4:44-48, 4:59-62; *see also id.* at Fig. 1 (excerpted to the right, "***delivery method preference selection 170***").) These "delivery method preferences" are



distinct from simple "contact information," such as an email address. (*See id.* at 3:64-4:3, 4:11-12.) Indeed, claim 1 itself uses "contact information" in other elements, such as element [1e]; therefore, the two terms cannot have the same meaning. *See Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1354 (Fed. Cir. 2012) (where a claim recited both "secured to" and "into engagement with," "[t]o give effect to all terms of the claim, 'secured to' and 'into engagement with' must have distinct meanings."). Hence, alleging that the Accused Product allows inputting "contact information" into the text field, without alleging separate facts for the existence of a "delivery method preference" in the existing user profile, fails to plausibly state a claim that the user profile includes ***delivery method preferences***. (Dkt. 16-2 at 6-7.)

Plaintiff's citation of a Meta webpage that states that advertisers can add custom questions to Meta Lead Ads to "uncover [customers'] preferences" is equally insufficient because it, too, lacks any mention of "***delivery method"*** preferences. (*Id.* at 7.)

**Source:** ([https://www.facebook.com/business/ads/lead-ads](https://www.facebook.com/business/ads/lead-ads))

Like claims [1d] and [1e], Plaintiff relied on this element as a point of novelty during patent prosecution. (*See supra,* §§ II.A, ¶ 5; IV.A.1-2.) As such, Plaintiff was required to plead element [1f] with "a higher level of detail" as well. *See Vervain*, 2022 WL 23469, *9, *15. Plaintiff is unable to allege that the retrieved user profile contains "delivery method preferences" when the identifier is determined to be present under the most basic pleading standard, let alone a heightened standard.

### 4.     Plaintiff does not allege that additional information associated with the advertisement is delivered, or that the delivery is based on delivery method preferences if the identifier is present, as required by element [1h]

Plaintiff alleges that "Meta Lead Ads *can* allow target users to engage with advertisements without leaving the app or manually entering all their information. This lets the users sign up to receive more information without interrupting their browsing session. Meta Lead Ads *can* allow advertisers and customers to immediately get in touch with each other through phone, Messenger, and WhatsApp." (Dkt. 16-2 at 9.) However, the Amended Complaint fails to plausibly allege (under a basic or the required heightened pleading standard, *see supra* at § IV.A.3) that when the "identifier" *is* present, Meta "*deliver[s] the additional information to the recipient based on the delivery method preferences*, the delivering being performed without interrupting the browsing session of the recipient," for three independent reasons. ('101 Patent, claim [1h]; Dkt. 16-2 at 9.)

***First***, Plaintiff fails to allege that the additional information ***associated with the advertisement*** described in element [1g] is delivered to the recipient, or user, as described in

element [1h].  Plaintiff identifies the recipient's **location and availability** as examples of "additional information associated with the advertisement" that advertisers can retrieve for the previous element [1g].  (Dkt. 16-2 at 8, below.)

> Meta Ads Manager can allow advertisers to retrieve additional information associated with the advertisement such as the recipient's location and availability, which can be used to identify nearby physical locations to the recipient. It can also provide the recipient with additional information directly from the Instant Form.

Such information, however, is information associated with the **user**, not the **advertisement**. Therefore, it fails to present plausible allegations that Meta Lead Ads meet the "retrieving additional information associated with the advertisement" limitations of element [1g], and subsequently the "delivering [] additional information" limitation in element [1h].

     **Second**, at no point does Plaintiff allege or provide facts to support the requirement that the delivery of additional information to the recipient be based on the user's **delivery method preferences** (and indeed, it cannot, because it has failed to, and cannot allege, that delivery method preferences are part of the alleged user profile at all).  *See supra* at § IV.A.3.

     **Finally**, Plaintiff cannot plausibly allege that the delivery of additional information to the recipient based on the delivery method preferences is performed "without interrupting the browsing session of the recipient."  (Dkt. 16-2 at 9.)  Plaintiff alleges that "Meta Lead Ads **can allow** target users to engage with advertisements without leaving the app."  (*Id*.)  Plaintiff must, however, allege that the accused method is actually performed, rather than only capable of being performed.  *See Ormco*, 463 F.3d at 1311; *see also Ericsson*, 773 F.3d at 1221.  Plaintiff's allegation of what the Accused Product **can** do, without alleging that it actually performs the accused method, fails to state a plausible claim of infringement.

     Without allegations that these key elements of the claim are present or actually practiced, the Amended Complaint must be dismissed.

### B.      The Amended Complaint Fails to State a Claim for Indirect Infringement

The Amended Complaint asserts, for the first time, that Meta engaged in indirect infringement. (Dkt. 16 ¶ 18.)  Plaintiff fails to plead any facts to support its claims for both induced and contributory infringement.  As an initial matter, to assert a claim of indirect infringement, a plaintiff must allege facts "sufficient to allow an inference that at least one direct infringer exists." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012).  "It is axiomatic that there can be no inducement or contributory infringement without an underlying act of direct infringement."  *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018) (citation omitted); *see also Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921-22 (2014) ("where there has been no direct infringement, there can be no inducement of infringement under §271(b)").  Here, Plaintiff has failed to make a showing that Meta (or anyone else) performs each of the method claim limitations, so its claims for indirect infringement must also be dismissed.  *See supra* at § IV.A.

To state a claim for induced infringement, Plaintiff must also allege "facts plausibly showing that [the defendant] ***specifically intended*** their customers to infringe the [asserted] patent and ***knew*** that the customer's acts constituted infringement."  *Affinity Labs of Texas, LLC v. Blackberry Ltd.*, No. 6:13-cv-362, 2014 WL 12551207 at *3 (W.D. Tex. Apr. 30, 2014).  The "specific intent" element is "demanding" and requires more than "unsubstantiated assertions" as to the intent of the alleged infringer.  *Affinity Labs of Texas, LLC v. Toyota Motor N. Am.*, No. 6:13-CV-365, 2014 WL 2892285, at *7 (W.D. Tex. May 12, 2014).  Here, Plaintiff does not assert any facts to support its claim beyond boilerplate and conclusory statements, including any facts to support a finding of the specific intent or knowledge required for induced infringement. (Dkt. 16 ¶¶ 18-19; Dkt. 16-2.)

To state a claim for contributory infringement, Plaintiff must also plead (1) knowledge of

16

the patent, (2) **knowledge** of the acts alleged to be infringement, (3) that the item provided by the defendant is **not suitable for substantial non-infringing use** and (4) that the accused product is a **material** part of the invention.  *See Commil USA, LLC v. Cisco Sys.*, 135 S. Ct. 1920, 1926, (2015). Plaintiff's contributory infringement allegations amount to two conclusory sentences that Meta "supplies a material part of an infringing method and/or system, where the material part is not a staple article of commerce and is incapable of substantial non-infringing use" and that Meta "supplies the technology that allows infringement the '101 patent."  Plaintiff has not provided any factual support for the allegations that (1) Meta had knowledge of infringement; (2) Meta Lead Ads is not suitable for substantial non-infringing use, and (3) what Meta provides *is* a material part of an infringing method.  (Dkt. 16 ¶ 18.)

Plaintiff's failure to assert any plausible facts to support its threadbare recitals of the claims justify the dismissal of its claims of induced and contributory infringement.

### C.  The Amended Complaint Should Be Dismissed with Prejudice Because Additional Amendment Would Be Futile

Following the Court's Standing Order, Meta provided written notice of the foregoing deficiencies to Plaintiff, identifying each of the deficiencies featured in this Motion (among others).  (Ex. 1 (Deficiency Letter).)  In response, Plaintiff filed the Amended Complaint, which added conclusory amendments to the introductory paragraphs in the accompanying claim chart, two webpage screenshots and boilerplate indirect/willful infringement allegations.  (*Compare* Dkt. 1-3 *with* Dkt. 16-2; *see also* Ex. 2 (Claim Chart Redline).)

The Plaintiff's amendments failed to remedy the deficiencies described herein.  As described above, the Amended Complaint remains fatally flawed on numerous independent grounds, each confirming that Plaintiff is "unwilling or unable to amend in a manner that will avoid dismissal," and the Amended Complaint should be dismissed with prejudice.  *Great Plains*

*Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *see also Jose v. Northside Independent School District*, No. SA-19-cv-393-JKP, 2021 WL 1111150, at *7 (W.D. Tex. Mar. 23, 2021); *Marucci Sports, L.L.C. v. National Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (holding a complaint is properly dismissed with prejudice when amendment would be futile).   Moreover, the Court's Standing Order makes clear that failure to cure deficiencies after being provided an opportunity to do so, as here, should lead to dismissal with prejudice.   (*See* Dkt. 7, at 1-2.)   Furthermore, Plaintiff's newly-added allegations of induced, contributory, and willful infringement similarly cannot be rescued by further amendment at least because Plaintiff has still failed to identify any act of ***direct*** infringement performed by any actor. *In re Bill of Lading*, 681 F.3d at 1336.   Plaintiff has already been afforded one opportunity to amend their Complaint, and the fact that they have not stated a claim for either direct or indirect infringement demonstrates that they are unable to do so, so these claims should also be dismissed with prejudice.   *See AMG Products, Inc. v. Fry's Electronics*, Case No. 6:18-cv-00267-JDK-JDL, 2019 U.S. Dist. LEXIS 63213, at *4 (E.D. Tex. 2019) (assuming, after serving an amended complaint, that "Plaintiffs are unable to state a claim for induced infringement and that a second amendment would be futile," and dismissing those claims with prejudice).

## V.      CONCLUSION

For all the foregoing reasons, Meta respectfully requests that Plaintiff's Amended Complaint be dismissed with prejudice, without leave to amend.   To the extent the Court believes it would be aided by oral argument, Meta respectfully requests a hearing on this Motion.

Date: June 30, 2023

Respectfully submitted,

*/s/ Brady Cox*
Brady Cox (TX Bar No. 2407084)
Brady.Cox@alston.com
ALSTON & BIRD LLP
2200 Ross Avenue, Suite 2300
Dallas, TX, 75201
Telephone: (214) 922-3443

Yuri Mikulka (CA Bar No. 185926)
yuri.mikulka@alston.com
Ty Thomas (CA Bar No. 343414)
ty.thomas@alston.com
ALSTON & BIRD LLP
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone: (213) 576-1000

Shawn Gannon (GA Bar No. 876327)
Shawn.gannon@alston.com
ALSTON & BIRD LLP
1201 W. Peachtree St. NE #4900
Atlanta, GA 30309
Telephone: (404) 881-7000

*Attorneys for Defendant Meta Platforms, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on June 30, 2023.

/s/ Brady Cox
Brady Cox

## CERTIFICATE OF CONFERENCE

I hereby certify that Defendant has complied with Judge Pulliam's Standing Order in Civil Cases and W.D. Tex. Civ. R. 7(g).  Defendant informed Plaintiff of the basis for the present motion through a letter sent on May 12, 2023, and telephonic meet and confer on May 17, 2023.  After receiving this notice, Plaintiff amended its pleading, but the amended pleading is still deficient for the same reasons identified in Defendant's letter.

/s/ Brady Cox
Brady Cox