# Exhibit 1

# ALSTON & BIRD

Chase Tower
2200 Ross Avenue, Suite 2300
Dallas, TX 75201
214-922-3400 | Fax: 214-922-3899

Brady Cox                    Direct Dial: 214-922-3443                    Email: brady.cox@alston.com

*VIA EMAIL*

May 12, 2023

Sanford E. Warren Jr.
Warren Rhoades LLP
2909 Turner Warnell Rd., Suite 131
Arlington, TX 76001
Email: swarren@wriplaw.com

      Re:    *Adnexus Inc., LLC v. Meta Platforms, Inc.*, Case No. 6:23-CV-00152 (W.D. Tex.)

Dear Mr. Warren:

      We represent Meta Platforms, Inc. ("Meta") in the above-referenced matter. We write to meet and confer regarding the deficiencies in the Complaint filed by Adnexus Inc., LLC ("Adnexus") against Meta, and Meta's intention to file a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).

      Consistent with Judge Pulliam's Standing Order in Civil Cases, please accept this as Meta's notice and request to meet and confer prior to the filing of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).[1] Please let us know within seven days of this letter whether you intend to amend the Complaint, as required by the Standing Order at 1-2. Please note that if Adnexus chooses not to amend its Complaint, and the Court grants Meta's Motion to Dismiss, Adnexus "shall not be allowed another opportunity to amend its Complaint" to correct the deficiencies. *See* Standing Order at 1-2.

---

[1] https://www.txwd.uscourts.gov/wp-content/uploads/2023/01/Standing-Order-In-Civil-Cases-Assigned-to-Judge-Jason-Pulliam101922.pdf (hereinafter "Standing Order").

Alston & Bird LLP                                                                                                   www.alston.com

Atlanta | Beijing | Brussels | Charlotte | Dallas | London | Los Angeles | New York | Raleigh | San Francisco | Silicon Valley | Washington, D.C.

May 12, 2023
Page 2

**The Complaint Fails to Explain How Meta Infringes Claim 1**

In the Complaint, Adnexus alleges that Meta infringes claim 1 of U.S. Patent No. 8,719,101 (the "101 Patent"), entitled "System and Method of On-Line Advertising." The Complaint refers to the "Accused Products" as "by way of example and without limitation, Meta Lead Ads," but fails to allege *how* Meta Lead Ads perform the elements of the asserted claim. Adnexus's sparse Complaint alleges only that Meta directly infringes claim 1 by "making, using, testing, selling, offering for sale and/or importing into the United States Defendant's Accused Products." (Dkt. 1 ¶¶ 15-17.) The claim chart attached to the Complaint only includes a brief introductory sentence or paragraph for each element with webpage screenshots, which fail to correct the threadbare recitals and instead contradict the claim limitation. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Fintiv, Inc. v. PayPal Holdings, Inc.*, 6-22-cv-00288, Dkt. 54 at p. 16 (W.D. Tex. Dec. 19, 2022) (finding complaint deficient when claim chart contradicted claim limitation and the accused defendant could not perform all claim steps itself as accused).

When, as here, a complaint fails to adequately explain how the defendant is alleged to have directly infringed the patent, a motion to dismiss is proper. *See Grecia v. PayPal, Inc.*, 21-cv-00309, Dkt. 42 (W.D. Tex. Aug. 15, 2022) (granting motion to dismiss where plaintiff's infringement allegations were deficient); *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1354 (Fed. Cir. 2021) (a complaint for patent infringement may be dismissed when its factual allegations are inconsistent with, and contradict, infringement). Adnexus's Complaint and the claim chart it relies on are deficient as demonstrated below.

Claim 1 recites the following:[2]

**[1a]** 1. A method of online advertising, comprising:

**[1b]** providing an advertisement associated with a first party for display in a network communication delivered to a computing device of a recipient during a browsing session, wherein the advertisement contains an interactive element displayed within the advertisement, and wherein the network communication is associated with a second party different than the first party;

**[1c]** receiving an indication that the recipient activated the interactive element displayed within the advertisement;

**[1d]** *determining, in response to the receiving the indication, whether an identifier containing unique identifying information about the recipient is present on the computing device*;

**[1e]** *if the identifier containing unique identifying information about the recipient is not present on the computing device:*

---

[2] For ease of reference only, we have used the same claim element numbering that Adnexus used in the claim chart attached to the Complaint.

May 12, 2023
Page 3

> *causing a text field to be displayed in at least a portion of the advertisement;*
>
> receiving contact information inputted into the text field by the recipient;
>
> *generating a user profile associated with the recipient based on the contact information*; and
>
> causing an identifier associated with the user profile to be stored on the computing device of the recipient; and

**[1f]** if the identifier containing unique identifying information about the recipient is present on the computing device:

> *retrieving a user profile associated with the recipient from a visitor information database using at least a portion of the identifier, wherein the user profile comprises at least delivery method preferences and demographic information*;
>
> **[1g]** *retrieving additional information associated with the advertisement based on at least a portion of the user profile associated with the recipient;*
>
> **[1h]** *delivering the additional information to the recipient based on the delivery method preferences, the delivering being performed without interrupting the browsing session of the recipient*; and
>
> **[1i]** *recording the activation by the recipient of the interactive element as recipient tracking data in an analytics server, the recipient tracking data being associated with the unique identifying information about the recipient.*

Adnexus's Complaint fail to state a claim for at least the reasons below.

- *First*, the Complaint fails to state a claim (for element [1d]) that Meta "**determine[es], in response to the receiving the indication, whether an identifier containing unique identifying information about the recipient is present on the computing device**" and performs one of the two alternative contingent limitations depending on the presence or absence of the identifier. With respect to this limitation, Adnexus's claim chart only states that "Meta Lead Ads can use cookies to store and receive identifiers." Neither the claim chart, nor the Complaint, specifies *what* Adnexus is pointing to as the "identifier." If Adnexus contends that the cookie itself is the claimed identifier, this is nonsensical because Adnexus also alleges that the cookie is used to store and receive the identifiers. Furthermore, under such an allegation the Accused Products could not infringe because the Complaint does not allege that the claimed determination step is performed *after* (and "in response to") the step of receiving an indication showing that the user activated the interactive element of the Meta Lead Ad. (*See* Dkt. 1-3 at p. 4.) In fact, Adnexus points to information stored in a cookie that allegedly "allow[s] the user to navigate between pages without having to log in every time," showing that, as alleged, the accused determination of whether the identifier is

present occurs *prior* to the user's activation of the interactive element displayed within the Meta Lead Ad. (*Compare to* Dkt. 1-3 at p. 5 (for claim element [1e] requiring that the identifier not be present, the claim chart notes that missing information "can be associated with the user through cookies").) Therefore, there is no factual allegation supporting a claim that Meta "determine[es], *in response to the receiving the indication*, whether an identifier . . . is present." (*See* Dkt. 1-3 at pp. 4-6.) If, on the other hand, Adnexus contends that some other subset of information within the cookie is the identifier, it also fails to do so sufficiently because the Complaint does not allege what that identifier is, or what "unique identifying information" it contains. As such, the Complaint fails to demonstrate infringement, and must be dismissed.

- *Second*, the Complaint fails to state a claim (for element [1e]) that Meta performs the step of "**if the identifier containing unique identifying information about the recipient is not present** on the computing device: [¶] **causing a text field to be displayed** in at least a portion of the advertisement." Adnexus alleges that "Meta Lead Ads can prompt the target user to enter missing information that could not be pulled from their profile into a text field within the lead ad." This allegation fails to meet the requirements of the limitation, as it does not allege that the accused Lead Ad is displayed if the claimed "identifier" is not present on the computing device. Without such a factual allegation, the Complaint must be dismissed. Tellingly, there is no suggestion that Adnexus has tested the functionality of the Accused Product with and without the accused "identifier" present on a computing device.

- *Third*, the Complaint further fails to state a claim (for element [1e]) that Meta "**generat[es] a user profile**" when the alleged identifier is not present. Adnexus's claim chart does not allege any supporting facts that the accused Meta Lead Ads ever **generate** a user profile (or when that generation occurs). Instead, it only alleges that pre-existing profiles could be supplemented with additional information. (*See* Dkt. 1-3 at p. 5 ("Meta Lead Ads can prompt the target user to enter missing information that could not be pulled from their profile.").) Without some factual allegation that the Accused Products actually generate a new user profile when the alleged identifier is not present after performing steps [1b] through [1d], the Complaint must be dismissed.

- *Fourth*, the Complaint fails to state a claim (for element [1f]) that Meta Lead Ads "retrieves[e] a user profile associated with the recipient from a visitor information database **using at least a portion of the identifier**" if the identifier is present. Adnexus alleges that "Meta Lead Ads can use cookies to store and receive identifiers" and that "Meta Lead Ads can automatically pull information from the person's profile to complete prefilled fields on the form." (Dkt. 1-3 at p. 7.) Adnexus's pleading fails to allege that any user profile associated with a recipient is retrieved using at least a portion of the claimed identifier. While Adnexus alleges that Lead Ads may be prefilled based on information from a user's Facebook account, it does not allege that the Facebook account information is associated with the claimed identifier, as the claim requires. Adnexus's Complaint also ignores the

May 12, 2023
Page 5

> antecedent basis for "the identifier," and fails to tie its allegations for this element to the same identifier referenced in limitations [1d] and [1e]. (*See* Dkt. 1-3 at pp. 4-5.) As the Complaint does not specify what claimed "identifier" meets each of those limitations, the Complaint fails to state a claim for this element and must be dismissed.
>
> - *Fifth*, the Complaint further fails to state a claim (for element [1f]) that Meta "**retriev[es] a user profile associated with the recipient from a visitor information database using at least a portion of the identifier, wherein the user profile comprises at least <u>delivery method preferences</u> and demographic information.**" Here, Adnexus points to the alleged existence of contact fields such as email address and phone number, but does not allege that this profile includes a delivery method *preference*, as required by the claim. (*See* Dkt. 1-3 at p. 7.) Without a factual allegation that a delivery method *preference* is included in the accused user profile, the Complaint must be dismissed.
>
> - *Sixth*, the Complaint fails to state a claim (for element [1h]) that Meta "**deliver[s] the additional information to the recipient based on the delivery method preferences**, the delivering being performed **without interrupting the browsing session** of the recipient." Adnexus alleges that "Meta Lead Ads can allow target users to engage with advertisements without leaving the app or manually entering all of their information. This lets the users sign up for receiving more information without interrupting their browsing session. Meta Lead Ads can allow advertisers and customers to immediately get in touch with each other through phone, Messenger, and WhatsApp." (Dkt. 1-3 at p. 9.) There are at least three problems with this allegation. First, Adnexus alleges that third parties, not Meta, are responsible for delivering the additional information to a recipient. (*See* Dkt. 1-3 at pp. 8-11.) Second, Adnexus fails to allege that the actions of these third parties are "based on the delivery method preferences." (*Id.*) Third, the accused "dealer locator" identified by Adnexus in connection with element [1g] opens a different webpage than the initial web page containing the Meta Lead Ad, thereby interrupting the browsing session. (*Id.*) Without allegations that Meta itself (not third parties) meets the claimed "delivering" step, and that the delivery is also performed "based on the delivery method preferences" and "without interrupting the browsing session of the recipient," the Complaint must be dismissed.

\*   \*   \*

In view of the above, Adnexus has failed to allege a plausible claim of infringement. Furthermore, any attempt to address the above deficiencies by amending the Complaint would be futile because there are no facts to support the allegations that Meta Lead Ads perform every claim step of the asserted claim of the 101 patent.

Under the circumstances, should Adnexus continue with this litigation, Meta intends to defend itself vigorously, including filing a Motion to Dismiss and seeking the corresponding costs. Moreover, Meta will seek recovery under 35 U.S.C. § 285. Adnexus's positions are objectively

May 12, 2023
Page 6

baseless, as evidenced by the myriad deficiencies identified above, including (but not limited to) Adnexus's basic failure to even identify the "identifier" that meets every claim limitation or to allege where the "delivery method preference" is located in the accused user profiles. *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 472 U.S. 545, 554 ("an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position … or the unreasonable manner in which the case was litigated."); *see also Source Vagabond Sys. v. Hydrapak, Inc.*, 753 F.3d 1291, 1298 (Fed. Cir. 2014) ("In patent lawsuits, [d]efending against baseless claims of infringement subjects the alleged infringer to undue costs—precisely the scenario Rule 11 contemplates."); *see also, Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1375(Fed. Cir. 2012) ("this early notice at least suggests that [plaintiff] had a duty to "stop and think," and to investigate whether its positions were objectively baseless, but it opted to ignore grappling with the incongruence raised by visual comparison of the accused devices with the plain language of the claims"); *Judin v. United States*, 110 F.3d 780, 783 (Fed. Cir. 1997) (emphasis added); *see also View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000) (before filing a patent infringement claim, Rule 11 "require[s] the law firm to, at a bare minimum, apply the claims of each and every patent that is being brought into the lawsuit to an accused device and conclude that there is a reasonable basis for a finding of infringement of at least one claim of each patent so asserted").

In addition, patent claims directed to targeted advertising have been repeatedly found to be invalid under 35 U.S.C. § 101. *See, e.g.*, *Free Stream Media Corp. v. Alphonsp Inc.*, 996 F.3d 1355, 1362 (Fed. Cir. 2021); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015); *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 886 (Fed. Cir. 2019). The weakness in Adnexus's § 101 position is by itself a sufficient basis for finding the cases exceptional. *See My Health, Inc. v. ALR Technologies, Inc.*, Case No. 2:16-cv-00535-RWS-RSP, ECF No. 131 (E.D. Tex. Dec. 19, 2017) (*adopted* at ECF No. 175). In light of the deficiencies presented above and also the 101 Patent's susceptibility to challenges under § 101, as well as §§102, 103, and/or 112, Adnexus's claims are frivolous and should be dismissed. The foregoing is not a complete statement of Meta's defenses in this matter, all of which are expressly reserved.

By copy of this letter, we provide Adnexus with an early notice and opportunity to investigate whether its positions are objectively baseless in view of the information provided here. Please let us know if you are available for a meet and confer call by May 16 regarding the above-referenced deficiencies and Meta's anticipated Motion to Dismiss.

                Sincerely,

                /s/ Brady Cox

cc: Yuri Mikulka